UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



VICTOR VETO STOCKONIS,

    Plaintiff,

v.                       Case No.: 2:10cv459

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Victor Veto Stockonis ("Mr. Stockonis"), brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference entered January 27, 2011. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be VACATED and REMANDED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. Stockonis was born on December 3, 1954. R.[1] 91. He has completed 12th grade. R. 111. He worked as maintenance supervisor and maintenance technician for apartment management companies prior to filing his benefits claims. R. 111-13. Mr. Stockonis was living in Wayne, Michigan when he filed the benefits applications at issue in this case. R. 79-88. He moved to Norfolk, Virginia during the pendency of administrative proceedings. Pl.'s Compl., at 2, ECF No. 3, at 2.

On January 8, 2004, Mr. Stockonis allegedly injured his left shoulder at work while unloading a snow blower from a truck. Id., at 1. His last day of work was January 27, 2004, and he has not resumed employment. Id. On April 1, 2004, Mr. Stockonis protectively filed for DIB and SSI, alleging a disability onset date of January 8, 2004. R. 35. Mr. Stockonis alleged disability on the basis of left shoulder and back pain. R. 36. He also complained of anxiety attacks, bipolar, and depression. R. 37. On July 23, 2004, his claim was denied. R. 35. He subsequently requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration ("SSA").[2] Id. A hearing was

---

[1] "R." refers to the certified administrative record of proceedings relating to this case (ECF No. 7), filed under seal pursuant to Local Civil Rule 7(C)(1).

[2] He was allowed to request a hearing upon receiving an initial denial because Mr. Stockonis resided in Michigan at that time, which was a disability redesign "prototype" district. See

held on March 22, 2006.  Id.  The ALJ rendered a decision finding Mr. Stockonis "not disabled" within the meaning of the Act and denying him benefits on May 26, 2006. R. 35-42.  Mr. Stockonis appealed the ALJ's decision to the Appeals Council of the SSA, which denied his request for review on August 25, 2006.  R. 11. This action rendered the ALJ's May 26, 2006 decision the final decision of the Commissioner.

On March 1, 2007, Mr. Stockonis again filed for DIB and SSI, with the same alleged onset date as the first, January 8, 2004. R. 79, 86.  Mr. Stockonis's second application alleged disability on the basis of "left shoulder and back injury." R. 96. He also complained of anxiety and "blacking out and falling once or twice a month." R. 118.   On April 9, 2007, Mr. Stockonis's second application was denied.  R. 11, 49-57.

On May 23, 2007 the SSA appointed an attorney for Mr. Stockonis.  On May 31, 2007, Mr. Stockonis requested a hearing before an ALJ.   R. 64.   In his Request for Hearing By Administrative Law Judge, Mr. Stockonis indicated that he was represented by an attorney but checked neither the box stating, "I wish to appear at a hearing" nor the box stating, "I do not wish to appear at a hearing and I request that a decision be made based on the evidence in my case." Id.  The record does not contain a waiver

Modifications to the Disability Determination Procedures; Extension of Testing of Some Disability Redesign Features, 71 Fed. Reg. 45890 (Aug. 10, 2006); R. 35.

of right to personal appearance.[3]  On July 10, 2008, a Notice of
Hearing was sent to Mr. Stockonis's address in Wayne, Michigan, but
the Acknowledgement of Receipt of Notice of Hearing was apparently
never signed.  R. 75.

On August 14, 2008, an ALJ held a video hearing from Stockton,
California.  R. 64.  Mr. Stockonis's attorney, Michael Jaffe,
appeared in Southfield, Michigan.  R. 11, 24.  Vocational expert
("VE") Stephen B. Schmidt was also present.  Id.  Mr. Stockonis was
absent.[4]  At the hearing, Mr. Jaffe explained that he was unable to
reach Mr. Stockonis at his home phone number and stated that "I
don't even know if he could get here financially."  R. 24.  The ALJ
asked Mr. Jaffe if he would like to withdraw, reschedule the
hearing, or go forward with an "on-the-record decision."  Mr. Jaffe
agreed to an on-the-record decision.  R. 25.  During the hearing,
Mr. Jaffe explained that Mr. Stockonis was not able to afford
treatment by a medical specialist, and the ALJ took testimony from
Mr. Schmidt.  R. 27-28.   Mr. Jaffe also questioned Mr. Schmidt.
R. 28.

---

[3] If a claimant checks the box indicating that he does not wish to
appear, he is directed to complete form HA-4608 to demonstrate that
he understands the consequences of waiving his right to a personal
appearance before an ALJ. See Hollon ex rel. Hollon v. Comm'r Soc.
Sec., 447 F.3d 477, 490 (6th Cir. 2006); Soc. Sec. Ruling 79-19,
1979 WL 15541, at *2.
[4] The ALJ's 2009 decision incorrectly states that Mr. Stockonis
appeared at the hearing.  R. 11.

On January 6, 2009, the ALJ issued a decision finding Mr. Stockonis "not disabled" from January 8, 2004 through the date of the decision and denying Mr. Stockonis benefits.[5] Mr. Stockonis appealed this decision to the Appeals Council and submitted additional medical evidence for consideration. R. 4-5, 180–185. On July 29, 2010, the Appeals Council issued a decision denying Mr. Stockonis's request for review. R. 1. The Notice of Appeals Council Action explained that the Appeals Council had considered the additional evidence submitted and found that it did not provide a basis for changing the ALJ's decision. R. 2. The Appeals Council's denial of review rendered the ALJ's January 6, 2009 decision the final decision of the Commissioner and subject to review in this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Stockonis timely commenced the present action seeking review of the Commissioner's January 2009 adverse decision on

---

[5] The Court notes that where the rights, issues, and facts involved in successive benefits applications are the same, an ALJ may employ principles of administrative res judicata to bar the subsequent claim. See Peoples v. Richardson, 455 F.2d 924, 925 (4th Cir. 1972); 20 C.F.R. § 404.957(c)(1). Although it appears that the ALJ in the instant case could have invoked administrative res judicata to bar review of Mr. Stockonis's disability status from January 8, 2004 through May 26, 2006, the date of the first ALJ's decision, see Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 476 n.4 (4th Cir. 1999) (concluding that the ALJ appropriately dismissed claimant's claims insofar as they related to a previously adjudicated period), it appears that the second ALJ based her conclusion regarding Mr. Stockonis's disability status on her own review of the medical evidence from the alleged onset date through the date of her decision. On remand, the Commissioner may wish to consider whether the 2006 decision has any preclusive effect on Mr. Stockonis's second application.

September 17, 2010 with a motion to proceed in forma pauperis.   ECF

No. 1.   On September 22, 2010, his Complaint was filed.   ECF No. 3.

The Commissioner filed an Answer on January 24, 2011.   On May 24,

2011, Mr. Stockonis timely filed a Motion for Summary Judgment.

ECF No. 17.   On June 23, 2011, the Commissioner timely filed a

Motion for Summary Judgment and Memorandum in Support.   ECF Nos.

18-19.   As neither party has indicated special circumstances

requiring oral argument in this matter, the case is deemed

submitted for decision based on the motion papers and memoranda.

See Local Civil Rule 7(J).

## II.   STANDARD FOR REVIEWING THE COMMISSIONER'S DECISION

The Court's review of the Commissioner's final decision is

limited to determining whether there is substantial evidence in the

administrative record to support the decision and whether the

decision was based on the correct application of the law.   42

U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.

1992) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A]

factual finding by an [ALJ] . . . is not binding if it was reached

by means of an improper standard or misapplication of law.").

Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."   Hunter,

993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401

(1971)).   It consists of more than a mere scintilla of evidence but

may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In reviewing the Commissioner's decision, the Court reviews the entire administrative record, "including any new evidence that the Appeals Council 'specifically incorporated' . . . ." Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 497, 599 (4th Cir. 1979)). "Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. The Court must nevertheless "give careful scrutiny to the whole record to assure that there is a solid foundation for the [Commissioner's] findings and that his conclusion is rational." Viteck v. Finch, 438 F.2d 1157, 1157-58 (4th Cir. 1971). Where the Commissioner fails to develop an accurate and logical nexus between the evidence in the record and the result, meaningful review cannot be accomplished. See Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003); Young v. Astrue, 771 F. Supp. 2d 610, 619 (S.D.W. Va. 2011).

## III. <u>ISSUES ON APPEAL</u>

Mr. Stockonis is a <u>pro se</u> litigant. As such, he is entitled to a liberal reading of his pleadings. <u>Jacobi v. Blocker</u>, 153 F.R.D. 84, 86 (E.D. Va. 1994). Moreover, the Court notes that "trial courts are encouraged to liberally treat procedural errors made by <u>pro se</u> litigants, especially when a technical or arcane procedural rule is involved." <u>Bauer v. Comm'r</u>, 97 F.3d 45, 49 (4th Cir. 1996).[6]

With these principles in mind, the Court construes Mr. Stockonis as seeking reversal of the Commissioner's decision because: (1) the Commissioner miscalculated Mr. Stockonis's date last insured, (2) the ALJ failed at step two to find that Mr. Stockonis's back pain and depression constituted severe impairments, (3) the ALJ failed at step three to conclude that Mr. Stockonis's impairments met or equaled the requirements of a listed impairment in Appendix 1 of 20 C.F.R. Part 404, Subpart P, and (4) the ALJ's conclusion that Mr. Stockonis was able to adapt to substantial gainful activity in the national economy was not supported by substantial evidence. <u>See</u> Pl.'s Sum. J. Mot., ECF No.

---

[6] Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect <u>pro se</u> litigants from inadvertent forfeiture of important rights because of their lack of legal training. While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules. <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

17. The Court does not reach these issues, because, having carefully reviewed the entire record, it finds that the ALJ's 2009 decision fails to permit meaningful judicial review. See Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983); Ricks v. Comm'r of Soc. Sec., No. 2:09cv662, 2010 WL 6621693, at *7 (E.D. Va. Dec. 29, 2010) (raising ground for remand sua sponte).

## IV.  THE ALJ'S DECISION

### A.  The Five-Step Sequential Analysis

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[7] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

---

[7] A medically determinable physical or mental impairment is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. §§ 404.1520 and 416.920.[8]  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  Under this process, the ALJ must determine in sequence:

(1)  Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working).  If so, the claimant is not disabled and the inquiry is halted.

(2)  Whether the claimant has a severe impairment.  If not, then the claimant is not disabled and the inquiry is halted.

(3)  Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.  If so, the claimant is disabled and the inquiry is halted.

(4)  Whether the impairment prevents the claimant from performing past relevant work.  If not, the claimant is not disabled and the inquiry is halted.

---

[8]  The Social Security Administration administers DIB and SSI through separate programs pursuant to 42 U.S.C. § 401 et seq. and § 1381 et seq., but the statutory scheme and regulations for determining eligibility for these benefits based on disability are, for all relevant purposes, identical.  See Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996); 20 C.F.R. Pts. 404, 416.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[9] and his vocational abilities. If so, the claimant is not disabled.

In this case, the ALJ reached the fifth step of the sequence, at which point he determined that Mr. Stockonis was not disabled. R. 20.

The ALJ noted that Mr. Stockonis had received "little in the way medical treatment" and "objective findings have been minimal." R. 18. The medical evidence in the record before the ALJ consisted of examination and treatment notes from Mr. Stockonis's primary care provider, Dr. Suman M. Patel, from October 2005 through December 2006, (145-52); an "Independent Medical Evaluation" performed by Dr. Peter Samet on August 21, 2006, (136-41), for Mr. Stockonis's worker's compensation claim; a Medical Evaluation for the State of Michigan Disability Determination Service ("DDS") performed by Gregory J. Baker, D.O., on July 9, 2004 (R. 131-33); a radiological report from October 20, 2005 showing moderate degenerative changes diffusely along Mr. Stockonis lumbar spine, (R. 135); and a Psychiatric Review Technique form completed by State DDS psychological consultant Dr. Ashok Kaul on April 6, 2007,

---

[9] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1545(a)(1).

-11-

(R. 163-76).   The record also contained Disability and Function Reports from Mr. Stockonis, in which he described his impairments and limitations, (R. 91-123); a Physical Residual Functional Capacity Assessment ("Physical RFC Assessment") performed by State disability examiner Rebecca Lindsey, (R. 154-61); and the ALJ's May 26, 2006 decision denying Mr. Stockonis benefits, (R. 35-42).

Based on this evidence, the ALJ determined at step one that Mr. Stockonis had not been engaged in substantial gainful activity since January 8, 2004, the alleged disability onset date. R. 13. The ALJ also found that Mr. Stockonis's date last insured was March 31, 2007.[10]   At step two, the ALJ found that Mr. Stockonis's left shoulder pain constituted a severe impairment.[11]   R. 13. The ALJ concluded that Mr. Stockonis's alleged back impairment, depression, blackouts,[12] and knee pain were non-severe. R. 14.

---

[10] "[A] period of disability [for DIB] cannot begin after a worker's disability insured status has expired," Soc. Sec. Ruling 83-10, 1983 WL 31251, at *8; see 20 C.F.R. §§ 404.130(a), 404.131(b), meaning that Mr. Stockonis needed to demonstrate that he became disabled on or before March 31, 2007 to be eligible for DIB, see Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005).   The same rule does not govern qualification for SSI, see Wilkins, 953 F.2d at 94.  Accordingly, the ALJ properly examined whether Mr. Stockonis demonstrated disability under the Act through the date of her decision. R. 19.
[11] For an impairment to be severe, it must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520, 416.920.
[12] The ALJ noted that the only time Mr. Stockonis complained of blackouts to a medical provider was during a visit to Dr. Patel on July 19, 2006.   R. 14, 152. The ALJ is mistaken. The record indicates that Mr. Stockonis complained to Dr. Patel of dizzy spells and blackouts on October 19, 2005. R. 130, 146.   The ALJ

At step three, the ALJ concluded that none of Mr. Stockonis's impairments met or equaled one of the impairments listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Appendix 1"). For a claimant to show that his impairment matches or is equal to an impairment in Appendix 1, he must present medical findings that the impairment meets or is equal in severity to <u>all</u> of the specified medical criteria of the relevant, or most similar, listed impairment. See <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 532 (1990); 20 C.F.R. §§ 404.1525(c), 416.925(c).

The ALJ compared Mr. Stockonis's shoulder pain to Listing 1.02, which contains the criteria for major dysfunction of a joint.[13]   She found that there was no evidence of "joint space

---

also opined that Dr. Patel attributed Mr. Stockonis's blackouts to alcohol use because Dr. Patel instructed Mr. Stockonis not to use alcohol when taking medication at the July 19, 2006 visit. The Court takes issue with this conclusion. The treatment note upon which the ALJ based this conclusion merely instructed Mr. Stockonis not to use alcohol while taking his pain medication, which appears to be a generic instruction regarding medication use. R. 152. The treatment note in no way attributes Mr. Stockonis's blackouts to alcohol use.

[13] Major dysfunction of a joint consists of:
    gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
20 C.F.R. Pt. 404 Subpt. P, App. 1, Listing 1.02A. Where the deformity does not effect a major peripheral weight-bearing joint, it must involve "one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively" due to "an extreme

narrowing, bony destruction, or ankylosis of the shoulder with either an inability to ambulate effectively or an inability to perform fine and gross movements effectively." R. 14. She did not compare any of Mr. Stockonis's non-severe impairments to those listed in Appendix 1.

## B. Residual Functional Capacity Determination

A claimant's residual functional capacity ("RFC") is the most a claimant can still do despite limitations caused by all of the claimant's medically determinable impairments. 20 C.F.R. § 404.1545(a). The ALJ uses a claimant's RFC at steps four and five to determine whether a claimant is able to perform past relevant work or to adjust to other work that exists in the national economy. Id. In assessing a claimant's RFC, ALJs must consider evidence from all sources, but opinions from medical sources generally deserve special consideration and are evaluated in a specific manner. See Nance v. Apfel, No. 97-1782, 1997 WL 755406131, at *3 (4th Cir. Dec., 8 1997); Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996); 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d); see id. § 404.1513 (defining "acceptable medical sources"); Soc. Sec. Rulings 06-03p, 2006 WL 2329939, 96-6p, 1996 WL 374180.

---

loss of function of both upper extremities." Id., Listings 1.00B2c, 1.02B.

After reviewing the entire record, the ALJ concluded that Mr. Stockonis had the RFC to perform a limited range of light work. R. 14.  Specifically, he was able to sit, stand, and walk up to six hours in an eight hour day, but he was precluded from climbing ladders, ropes, scaffolds and from overhead and side lifting/reaching with his left arm.  Id.  He could carry up to ten pounds frequently and twenty pounds occasionally.  Id.

## 1. Weight Accorded to Opinion Evidence from Disability Examiner

The ALJ gave significant weight to the opinion of the "non-examining State agency physician who reviewed the documentary evidence on March 28, 2007," stating that it "is consistent with the treatment evidence as well as prior evaluations." R. 18.  Yet, the Physical RFC Assessment dated March 28, 2007 to which the ALJ referred was not completed by a State agency physician but rather a State agency disability examiner.[14]  See Day v. Shalala, 23 F.3d 1052, 1056 (6th Cir. 1994) ("The disability examiner is a non-medical employee"); R. 153, 161, 178.

The Physical RFC Assessment indicates that Mr. Stockonis is capable of occasionally lifting a maximum of twenty pounds and frequently lifting ten pounds. R. 155.  It states that he can stand and/or walk and sit with normal breaks for a total of about

---

[14] Depending on the claimant's circumstances, the SSA's regulations permit a State agency disability examiner to make an RFC determination alone or in conjunction with a State agency medical or psychological consultant.  See 20 C.F.R. §§ 404.1546(a). 404.946(a).

six hours a day.  Id.   It also states that Mr. Stockonis was frequently limited in his ability to climb ramps, stairs, ladders, ropes and scaffolds, and in his ability to stoop, kneel, crouch, and crawl.  R. 156.   It states that he should avoid overhead lifting/reaching with his left arm. R. 157.

On the last page of the Physical RFC Assessment, the field labeled "Disability Examiner's Signature" contains the name Rebecca Lindsey.  R. 161.  The field labeled "Medical Consultant's Code" is blank.  The record contains a Request for Medical Advice from a "psychologic [sic] specialty" sent by Examiner Rebecca A. Lindsey on March 28, 2007.  Moreover, a case development sheet contains entries from "Ms. Lindsey" on March 28, 2007 and April 6, 2007. This evidence leads the Court to conclude that the opinion of the "State agency physician" to which the ALJ gave "[s]ignificant weight" concerning Mr. Stockonis's physical limitations was not, in fact, the opinion of a physician.

In 2006, Dr. Samet examined Mr. Stockonis in relation to a worker's compensation claim.  Dr. Samet stated:

> I would like to have the patient remain off work until he
> has had the opportunity to be more fully evaluated and
> treated; however, were the patient to have to return back
> to work, I would recommend the following restrictions: no
> overhead work or lifting out to the side. I would also
> recommend no lifting with the left shoulder in excess of
> 20 lbs.  The duration of these restrictions would be
> dependent on how the patient progresses with the
> appropriate treatment.

-16-

R. 141. The ALJ did not assign specific weight to Dr. Samet's opinion, though she noted that she adopted the twenty pound weight restriction and that the limitation that Mr. Stockonis remain off work was temporary and dependent upon further evaluation, which Mr. Stockonis apparently did not receive.   R. 17.   Other than Dr. Samet's 20 pound weight restriction, the Physical RFC Assessment that Ms. Lindsey completed on March 28, 2007 is the only evidence in the record concerning Mr. Stockonis's physical functional limitations to which the ALJ referred.[15]

### 2. Credibility Assigned to Statements of Mr. Stockonis

In analyzing Mr. Stockonis's RFC, the ALJ concluded that his statements regarding pain and other symptoms were not convincing or credible. R. 18.   With respect to his left shoulder impairment, she noted that upon examination in July 2004, he had been able to fully abduct both shoulders to 150 degrees, and Dr. Baker believed the weakness Mr. Stockonis displayed in his left arm upon neurological examination was due to pseudoparesis.[16] R. 19.   Dr. Baker also noted that Mr. Stockonis needed to use his other arm to pull his arm overhead but that his grip strength was unimpaired.   R. 132.   When Dr. Samet examined Mr. Stockonis in August 2006, he noted that Mr.

---

[15] Although the record contains the 2006 ALJ decision denying Mr. Stockonis benefits, (R. 35-43), the ALJ did not reference that opinion in her decision.

[16]   Pseudoparesis is "[a]pparent paralysis due to voluntary inhibition of motion because of pain, incoordination, or other cause, but without actual paralysis." Stedman's Medical Dictionary 1472-73 (27th ed. 2000).

Stockonis's grip strength in his left hand was only 80 pounds
compared to 130 pounds in his right hand. R. 139.  The ALJ noted
the inconsistency between Dr. Samet's and Dr. Baker's
findings.  R. 19.

The ALJ also noted the inconsistency in Mr. Stockonis's
ability to perform straight leg raises during examinations that
took place one month apart.  On July 19, 2006, Mr. Stockonis was
unable to perform straight leg raises due to pain in his lumbar
spine, (R. 152, 156), but Dr. Samet observed "an equivocal straight
leg raise on the left side at 90 degrees causing increased numbness
in his left foot; negative on the right side" on August 21, 2006,
(R. 140).  The ALJ also noted inconsistencies in Mr. Stockonis's
reports of prior injuries to his back and shoulder.  R. 19.  Dr.
Patel noted on October 19, 2005 that Mr. Stockonis reported an
injury to his shoulder six years prior, though it does not indicate
which shoulder.  R. 19, 148.  Dr. Samet's evaluation from August
2006 states that Mr. Stockonis reported that he had no problems
with his left shoulder prior to January 2004.  R. 137.  Dr. Patel
further noted on October 19, 2005 that Mr. Stockonis had injured
his back 12 years prior. R. 148.  The ALJ observed that Mr.
Stockonis made no mention of a back injury to Dr. Baker in July
2004. R. 19.

The fact that Mr. Stockonis smoked against medical advice and
documents indicating that he drank excessively, occasionally, or

-18-

rarely, further undermined his credibility for the ALJ. R. 19. There is evidence that Dr. Patel discussed smoking cessation with Mr. Stockonis. R. 145. The record indicates that Mr. Stockonis reported to Dr. Baker in 2004 that he drank one fifth of liquor daily and reported to Dr. Samet in 2006 that he rarely drank alcohol. A notation from Dr. Patel's October 2005 examination indicates that Mr. Stockonis may be an alcoholic, but notes from examinations from August through December 2006 merely indicate that he consumes alcohol without any discernible reference to quantity. 149-152.

As previously noted, Mr. Stockonis was not present at the hearing before the ALJ on August 14, 2008. Accordingly, the ALJ did not examine Mr. Stockonis concerning inconsistencies in his statements, behavior, or symptoms.

C. **Steps Four and Five: Ability to Perform Substantial Gainful Activity**

At step four, the ALJ determined that Mr. Stockonis's RFC prevented him from performing past relevant work as a maintenance supervisor. R. 19. At step five, the ALJ found that Mr. Stockonis was an individual closely approaching advanced age at the alleged disability onset date,[17] had at least a high school education, was

---

[17] In fact, at the alleged date of disability onset, January 8, 2004, Mr. Stockonis was 49 years old, making him a "younger person" under the SSA's regulations. See 20 C.F.R. §§ 404.1563(c), 416.963(c). However, at the time of the ALJ's decision, Mr.

able to communicate in English, and had acquired work skills from past relevant work. R. 19-20.  Based on this information and Mr. Stockonis's RFC, the ALJ concluded that a finding of "not disabled" was appropriate under the framework of Medical Vocational Rule 202.15.[18]

In reaching this conclusion the ALJ relied on the testimony of the VE, Mr. Schmidt.  The ALJ asked Mr. Schmidt to consider a hypothetical person with Mr. Stockonis's age, education, and past relevant work experience. R. 28.  She then asked whether jobs existed for such a person if the person "can sit six hours out of an eight hour day, can stand six hours out of an eight hour day, and can walk six hours out of an eight hour day. Can occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. Can . . . never climb ladders, and can do no overhead reaching with the left upper extremity, and the left upper extremity is non-dominant."  Id.  The ALJ responded that such an individual would be able to work as a semi-conductor worker, cashier, or information

---

Stockonis was 54, making him a "person closely approaching advanced age." Id., §§ 404.1563(d), 416.963(d).

[18] Medical Vocational Rule 202.15 directs a finding of "not disabled" for individuals closely approaching advanced age who are high school graduates with skilled or semi-skilled transferable work experience and can perform the full range of light work.  20 C.F.R. Pt. 404 Subpt. P, App. 2, Rule 2.15.  Where an individual is not able to perform the full range of light work, the rules in the Medical Vocational Guidelines (the "Grids") should be used as a framework.  Id., Rule 200.00(e)(2); Soc. Sec. Ruling 85-15, 1985 WL 56857, at *1.

clerk, of which there were, respectively, 14,000, 32,000, and 2,500 jobs available in the state of Michigan.  Id.

## V.   **EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

In addition to the evidence before the ALJ, the Court must review the evidence that the Appeals Council incorporated into the administrative record.  Meyer, 662 F.3d at 704.  In his appeal to the Appeals Council from the ALJ's 2009 unfavorable decision, Mr. Stockonis submitted additional evidence. The evidence includes a Medical Evaluation completed by Dr. Kimberly Span on September 26, 2008, which states that Mr. Stockonis is "unable to participate in employment and training activities in any capacity at this time" due to low back pain, degenerative disk disease, and depression. R. 180-181.  Dr. Span gave Mr. Stockonis a primary diagnosis of "degenerative disk disease-lumbar spine" and a secondary diagnosis of "Depression." R. 181.  The additional evidence also contains a statement from Dr. Kimberly Span, dated September 11, 2009, confirming that Mr. Stockonis visited her office that day and stating that he has a medical history of syncopal episodes/blackouts and chronic back pain secondary to degenerative disk disease. R. 197.

Mr. Stockonis also submitted a one-page excerpt from a physical examination of his shoulders dated October 25, 2006 from an unknown source.  Mr. Stockonis states it is from a "State Employed 'Physician' of Michigan." R. 187.  Although the excerpt

is dated during the time-period examined by the ALJ, this evidence apparently was not before the ALJ.[19] The remainder of the evidence consists of a discharge instruction sheet from Dr. Patel instructing Mr. Stockonis to follow up with a specialist, instructions for caring for a rotator cuff injury, excerpts from Dr. Samet's August 2006 physical examination, and appointment slips, prescription slips, and EEG instructions from Sentara Norfolk General Hospital. R. 5, 180-97.

## VI. DISCUSSION

In claims for disability benefits, the claimant bears the burden of proof at steps one through four, Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987), but if the claimant successfully demonstrates that he has medically determinable impairments that prevent him from engaging in past relevant work, the burden shifts to the Commissioner at step five to prove that a significant number of jobs exist in the national economy that the claimant can perform, Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). In spite of these burdens, a hearing before an ALJ is intended to be nonadversarial, and the ALJ has a duty to fully inquire into each issue and to develop a full and fair record. See Heckler, 461 U.S. at 471 (quoting Broz v. Schweiker, 677 F.2d 1351, 1364 (11th Cir.

---

[19] On remand, the Commissioner should determine whether the complete examination record should have been before the ALJ as part of the Commissioner's duty to fully and fairly develop the administrative record. See Heckler v. Campbell, 461 U.S. 458, 471 (1983).

1982)); <u>Marsh v. Harris</u>, 632 F.2d 296, 299 (4th Cir. 1980); 20 C.F.R. § 404.1512(d).  In so doing, the Commissioner must present the Court with "findings and determinations sufficiently articulated to permit meaningful judicial review." <u>DeLoatche</u>, 715 F.2d at 150.  Moreover, it is the exclusive province of the Commissioner to assign weight to evidence and reconcile conflicts in the record. <u>See</u> <u>Hays</u>, 907 F.2d at 1456.

The Court agrees that Mr. Stockonis has presented little objective evidence demonstrating the severity of his alleged impairments; however the Court cannot meaningfully review the ALJ's decision because she failed to secure a written waiver of personal appearance from Mr. Stockonis and mischaracterized the Physical RFC Assessment as opinion evidence from a medical source. <u>Cf.</u> <u>Stoner v. Sec'y Health & Human Servs.</u>, 837 F.2d 759, 761 (6th Cir. 1988) (remanding case where ALJ failed to secure a written wavier of hearing from the claimant); <u>Thomas v. Comm'r of Soc. Sec.</u>, 24 Fed. App'x 158, 162-63 (4th Cir. 2004) (unpublished decision) (remanding case where Appeals Council mistakenly believed that the opinion of a medical source was that of a non-treating physician).

## A. <u>ALJ's Failure to Secure a Written Waiver of Personal Appearance</u>

A claimant has a right to appear at a hearing before an ALJ either personally or through a representative.  20 C.F.R. § 404.950(a).  Although the right can be waived, <u>see</u> <u>id.</u>, §§ 404.929,

950, "a personal appearance is considered to be of sufficient importance that an ALJ can insist upon a claimant being present even when there has been a prior valid waiver," Stoner, 837 F.2d at 761 (citing 20 C.F.R. § 404.950(b)). A claimant's failure to appear at a hearing, even when counsel appears on his behalf, does not alone act as a waiver of a claimant's right to appear. See Stoner, 837 F.2d at 761. Rather, the SSA has recognized that a claimant's personal appearance and oral testimony "may be essential to proper evaluation of the factors at issue." Soc. Sec. Ruling 79-19, 179 WL 15541, *2. The SSA has issued a Ruling intended to apprise claimants of this fact. Social Security Ruling 79-19 states:

> An individual or the individual's authorized representative may waive the right to personal appearance at a hearing only by a writing signed by the individual or the authorized representative which shows:
>
> 1. a thorough explanation of the hearing procedure has been given;
> 2. the right to personal appearance at the hearing to testify and present evidence has been explained;
> 3. an explanation has been given of the right to representation at the hearing by an attorney or other person of the individual's choice;
> 4. it has been explained that, in some cases, additional evidence obtained thorough oral testimony and personal presence before the presiding officer may be of value in evaluating the issues;
> 5. the individual has been advised that, if he or she does not appear, the claim will be decided solely on the written evidence then in file plus any additional evidence submitted by the individual or the representative or obtained by the hearing officer.
> 6. the individual has been advised that he or she may withdraw the waiver of the right to appear at the

> > hearing at any time prior to mailing of the notice of
> > the decision.

Id. at *2-*3.  Where such a waiver has not been obtained, the ALJ
is directed to request one. Id. at *2.[20]

In the instant case, the record does not contain a written
waiver of personal appearance.  Nor is it apparent that Mr.
Stockonis ever received any notice of the August 2008 hearing.  R.
75.  Although Mr. Jaffe agreed to go forward with the hearing, he
did so without consulting his client, and the ALJ failed to secure
a written waiver or inform Mr. Jaffe that one was required. R. 24;
see Soc. Sec. Ruling 79-19, 179 WL 15541, at *2.

Despite the ALJ's clear failure to comply with agency policy,
absence of the waiver does not warrant remand unless it prejudiced
Mr. Stockonis.  See Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir.
1981); Stiver v. Shalala, 879 F. Supp. 1021, 1024 (D. Neb. 1995).
Prejudice exists where compliance with a Ruling might have led the
ALJ to a different decision. Newton v. Apfel, 209 F.3d 448, 458
(5th Cir. 2000); Huddleston v. Astrue, --- F. Supp. 2d ---, 2011 WL
6004279, at *13 (S.D.W. Va. Nov. 23, 2011) (quoting Ripley v.
Chater, 67 F.3d 552, 557 n.22 (5th Cir. 1995)).  In the instant
case, the ALJ determined that Mr. Stockonis's claims of pain and
the severity of his symptoms were not credible without examining
Mr. Stockonis concerning inconsistences in his statements or giving

[20] Submission of form HA-4608 generally satisfies the waiver
requirement. See Hollon ex rel. Hollon, 447 F.3d at 490.

him an opportunity to explain behaviors and statements that the ALJ believed undermined his credibility. See Stoner, 837 F.2d at 761 ("Where pain is a key factor in a claim, it is particularly important for the ALJ to be able to make observations of a claimant and to question the claimant directly."); Pittman v. Astrue, No. 10 C 50034, 2011 WL 6140656, at *7 (N. D. Ill. Dec 9, 2011) (finding prejudice where the ALJ found the claimant's statements about the intensity, persistence, and limiting effects of her symptoms not credible but failed to examine her). The Court finds that the ALJ failed to comply with agency policy concerning Mr. Stockonis's right to appear at his hearing, but it need not determine whether the error actually prejudiced Mr. Stockonis because the ALJ's treatment of Ms. Lindsey's Physical RFC Assessment as the opinion of a medical source prevents meaningful review of the decision.

## B. ALJ's Mischaracterization of Opinion Evidence

At the administrative law judge hearing level, the ALJ is responsible for assessing a claimant's RFC based on all medical and other relevant evidence. 20 C.F.R. §§ 404.1513(c), 404.1545(a)(3), 404.1546(c), 416.913(c), 416.945(a)(3), 416.946(c). Although ALJs are directed to consider evidence from all sources concerning a claimant's mental and physical restrictions, they must assign specific weight to opinions from medical sources and articulate their reasons for the weight assigned. See Gordon, 725 F.2d 231,

235; 20 C.F.R. § 404.1527(c)-(d), 416.927(c)-(d); see id. § 404.1513(a) (defining "acceptable medical sources"). State disability examiners are not physicians. Their opinions are not opinions from an acceptable medical source and should not be afforded the same weight as opinions from acceptable medical sources. See Downs v. Astrue, Civil Action No. 09-1948, 2010 WL 5644870, at *6 (W.D. La. Nov. 23, 2010); 20 C.F.R. §§ 404.1527(f), 416.927(f); 404.1513(d)(3), 416.912(d)(3).

In the instant case, the ALJ assigned significant weight to the Physical RFC Assessment that Ms. Lindsey completed, mistakenly believing Ms. Lindsey to be a State agency medical consultant.[21] Cf. Dewey v. Astrue, 508 F.3d 447, 449 (8th Cir. 2007) (holding that ALJ committed reversible legal error by mistakenly believing that RFC assessment was performed by a physician and weighing the opinion under the SSA's regulations for weighing medical opinions). The ALJ did not assign any weight to the opinion of Dr. Samet, though she adopted his recommendation that Mr. Stockonis lift no more than 20 pounds. R. 17. The record is otherwise devoid of medical source statements supporting the ALJ's RFC determination. Cf. Downs, 2010 WL 5644870, at *6 (holding that ALJ's decision was not supported by substantial evidence where the ALJ mistakenly believed that the RFC assessment was performed by a physician when

---

[21] The Appeals Council and the parties also apparently operated under the same mistaken assumption concerning Ms. Lindsey's qualifications.

-27-

it was actually performed by a disability examiner and no other medical source statements supported the ALJ's RFC determination). The ALJ's misjudgment infected the remainder of her decision by informing the questions she posed to the VE, and the Grid Rule she used as a framework for concluding that Mr. Stockonis was not disabled. Cf. Quartermaine v. Astrue, No. CA 11-0142-C, 2011 WL 6288117, at *6 (S.D. Ala. Dec. 14, 2011) (remanding case where ALJ's mistaken belief that RFC assessment was performed by physician affected testimony of VE and conclusion that claimant could perform past relevant work); Lilly v. Astrue, No. 5:08cv00115, 2009 WL 4015341, at *5 (W.D. Va. Nov. 18, 2009).

To say that the Commissioner's decision is supported by substantial evidence when he has not analyzed and appropriately weighed all relevant evidence "is an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Gordon, 725 F.2d at 236 (4th Cir. 1984) (quoting Arnold, 567 F.2d at 259). Because the ALJ gave significant weight to an opinion she mistakenly believed to be that of an acceptable medical source concerning Mr. Stockonis's functional limitations, the logic of the decision was fatally flawed. See Lilly v. Astrue, 2009 WL 4015341, at *5. The ALJ's error prevents the court from engaging in meaningful review of the ALJ's decision because it cannot speculate as to how the ALJ's decision might have been different had she correctly assessed the

-28-

evidence before her. See Meyer, 662 F.3d at 707 (remanding case where no fact finder had made any findings concerning the weight of a treating physician's opinion); Hays, 907 F.2d at 1456 ("[I]t is not within the province of a reviewing court to determine the weight of the evidence. . . ."). For this reason, remand is warranted

## VII. CONCLUSION

Mr. Stockonis seeks reversal of the ALJ's decision denying him DIB and SSI benefits because: (1) the Commissioner miscalculated his date last insured, (2) the ALJ failed at step two to find that Mr. Stockonis's back pain and depression constituted severe impairments, (3) the ALJ failed at step three to conclude that Mr. Stockonis's impairments met or equaled the requirements of a listed impairment in Appendix 1, and (4) the ALJ's conclusion that Mr. Stockonis was able to adapt to substantial gainful activity in the local and national economy was not supported by substantial evidence.

The Court does not reach these assignments of error because the ALJ's RFC determination, based on the mistaken belief that the opinion of a medical source supported her findings regarding Mr. Stockonis's functional limitations, prevents the Court from engaging in meaningful review of the decision. The ALJ's decision to proceed with the hearing without securing a written waiver of

personal appearance from Mr. Stockonis, in contravention of SSA policy, further compromised the record in this matter.

Section 405(g) requires the Court to enter judgment before officially remanding the case. See Ford v. Apfel, No. 97-3601, 1998 WL 614190, at *2 (E.D. La. Sept. 10, 1998). Accordingly, the Court recommends vacating the ruling of the Commissioner.

### VIII.    RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment be DENIED, that Mr. Stockonis's motion for summary judgment be GRANTED to the extent it seeks reversal and remand of the Commissioner's decision and DENIED to the extent that it seeks entry of an order directing the award of benefits. The Court further RECOMMENDS that the Commissioner's decision be VACATED and REMANDED so that the Commissioner may reconsider Mr. Stockonis's claim for benefits based upon all relevant evidence, including the medical documentation submitted to the Appeals Council, and consistent with the findings in this Report.

### IV. REVIEW PROCEDURE

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this

-30-

Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 11, 2012